IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANDREW FRITZ, individually and
on behalf of all others similarly
situated,

      Plaintiff,

v.

FEDERAL WARRANTY SERVICE
CORPORATION and LOWE'S
HOME CENTERS, LLC,

      Defendants.

CIVIL ACTION FILE

NO. 1:20-CV-2210-MHC

## ORDER

This case comes before the Court on Defendant Federal Warranty Service

Corporation ("Federal Warranty")'s Motion to Compel Arbitration and to Stay

Action Pending Arbitration [Doc. 15], Federal Warranty's Motion to Dismiss

[Doc. 16], and Defendant Lowe's Home Centers, LLC ("Lowe's")'s Motion to

Stay Action Pending Arbitration [Doc. 20].

## I.    BACKGROUND

Plaintiff Andrew Fritz ("Fritz") purchased a barbeque grill from a Lowe's

home improvement store on January 5, 2019, for $399.00.  Compl. [Doc. 1] ¶ 20.

While Fritz was checking out and attempting to pay, a Lowe's representative

inquired as to if he wanted to purchase a four-year extended warranty protection plan ("Protection Plan") for the barbeque grill.  Id.; see also Protection Plan [Doc. 16-2 at 9-48].  Fritz alleges that the Lowe's representative told Fritz that the Protection Plan "covers everything," including on-site repairs, and that Fritz would be "completely protected."  Compl. ¶ 20.  Fritz purchased the Protection Plan for $79.99 and the Lowe's representative placed a brochure regarding the Protection Plan in Mr. Fritz's shopping bag with his other items.  Id.  Fritz alleges that the terms and conditions of the Protection Plan, including the provision mandating arbitration, were contained in the brochure placed in his shopping bag at the time of purchase.  Compl. ¶¶ 3, 20, 24; see also Decl. of Angie Huggins Breedlove ("Breedlove Decl.") (June 24, 2020) [Doc. 16-2] ¶¶ 13-14 (indicating that a brochure containing the terms and conditions of the Protection Plan are made available to customers prior to purchase and provided to customers after purchase).

The terms and conditions of the Protection Plan included the following clause mandating arbitration for any dispute between Fritz and Lowe's or Federal Warranty arising out of or related to the Protection Plan:

> Any and all claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise, including statutory, common law, fraud (whether by misrepresentation or by omission) or other intentional tort, property, or equitable claims) arising out of, relating to, or in connection with (1) this Plan or any prior Plan, and the purchase thereof; and (2) the validity, scope, interpretation, or enforceability of

> this PROVISION or of the entire Plan (collectively, a "Claim"),
> between You and Us shall be resolved by binding arbitration before a
> single arbitrator, except that either You or Us may bring a Claim in
> small claims court (where allowed by law).

Protection Plan at 24. The same provision stated that any arbitration "will be

administered in keeping with the Consumer Arbitration Rules (or their functional

equivalent) ("Rules") of the American Arbitration Association ("AAA") in effect

when the Claim is filed." Id. This section also provided as follows:

> Unless You and We agree, the arbitration will take place in the county
> and state where You live. The Federal Arbitration Act, 9 U.S.C. § 1 et
> seq., will govern and no state, local or other arbitration law will apply.
> YOU AGREE AND UNDERSTAND THAT this PROVISION means
> that You give up Your right to go to court on any claim covered by this
> PROVISION, except where You or Us decide to proceed in small
> claims court. You also agree that any arbitration proceeding or small
> claims court proceeding will only consider Your Claims. Claims by, or
> on behalf of, other individuals will not be arbitrated or litigated in any
> proceeding that is considering Your Claims.

Id. Additionally, the terms and conditions included a "free-look" period which

permitted Fritz to reject and cancel the Protection Plan and get his money back if,

after reviewing the terms and conditions, he did not want to accept them:

> You may, within 20 days, reject and return this Plan. Upon return of
> the Plan within the applicable time period, if no claims have been made,
> You will be refunded the full Plan Price. A 10% penalty per month will
> be added to a refund that is not paid or credited within 30 days after the
> return of the Plan.

Id. at 28.

Fritz alleges that in November of 2019, he began to have problems with his barbeque grill and he contacted Lowe's requesting an on-site pick-up as he believed was covered under the Protection Plan.  Compl. ¶ 20; see also Decl. of Angelia Sallee-Atchison (June 25, 2020) ("Sallee-Atchison Decl.") [Doc. 20-1] ¶ 14 (indicating that Lowe's business records reflect that Fritz made a claim under the Protection Plan on November 17, 2019).  Fritz alleges that "Lowe's informed him that they would not honor the Protection Plan" because the barbeque grill was under a five-year parts warranty from the manufacturer, and that Lowe's would not perform an on-site pick-up of the grill.  Compl. ¶ 20.  However, Lowe's did offer to reimburse Mr. Fritz for the full cost of the grill plus sales tax (totaling $436.91).  Sallee-Atchison Decl. ¶ 15.  Fritz accepted the offer and on November 21, 2019, Lowe's fully reimbursed Fritz the $436.91.  Id. ¶ 16.

## II.    LEGAL STANDARD

Under Supreme Court precedent, "whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) (internal punctuation and citation omitted); see also Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010).  The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.

(2012), "reflects the fundamental principle that arbitration is a matter of contract."

Id. Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "The FAA thereby places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." Rent-A-Center, 561 U.S. at 67 (citations omitted).

Parties may contract around the general rule and agree to submit questions of arbitrability to the arbitrator in the first instance. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995); see also Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332-33 (11th Cir. 2005). For example, "when parties incorporate the rules of the [American Arbitration] Association into their contract, they 'clearly and unmistakably' agree[] that the arbitrator should decide whether the arbitration clause [applies]." U.S. Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1311 (11th Cir. 2014) (quoting Terminix, 432 F.3d at 1332). However, regardless of whether the parties have delegated arbitrability to the arbitrators, before a court can compel a party to arbitration, it must be satisfied that the parties actually agreed to arbitrate. AT&T Techs., Inc. v. Commc'ns Workers

of Am., 475 U.S. 643, 648 ("[A]rbitration is a matter of contract and a party cannot

be required to submit to arbitration any dispute which he has not agreed so to

submit."); see also Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1214 (11th

Cir. 2011) (quotation marks and citation omitted) ("Even though there is a

presumption in favor of arbitration, the courts are not to twist the language of the

contract to achieve a result which is favored by federal policy but contrary to the

intent of the parties.").

The FAA "provisions manifest a liberal federal policy favoring arbitration

agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991)

(quotation omitted); see also Shearson/Am. Express, Inc. v. McMahon, 482 U.S.

220, 226 (1987) (holding that the FAA's "federal policy favoring arbitration"

requires that courts "rigorously enforce agreements to arbitrate."). Therefore,

"questions of arbitrability must be addressed with a healthy regard for the federal

policy favoring arbitration" and "any doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v.

Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Consequently, arbitration

provisions are to be generously construed in favor of arbitration. Id. However,

"while doubts concerning the scope of an arbitration clause should be resolved in

favor of arbitration, the presumption does not apply to disputes concerning whether

6

an agreement to arbitrate has been made." <u>Brazmore v. Jefferson Capital Sys.,</u>

<u>LLC</u>, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting <u>Dasher v. RBC Bank (USA)</u>,

745 F.3d 1111, 1116 (11th Cir. 2014) (quotation marks and citation omitted)).

## III.   ANALYSIS

When a district court adjudicates a motion to compel arbitration under the

FAA, it must engage in a two-step inquiry. <u>Mitsubishi Motors Corp. v. Soler</u>

<u>Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626-28 (1985); <u>Klay v. All Defendants</u>,

389 F.3d 1191, 1200 (11th Cir. 2004).  First, the Court determines whether the

parties agreed to arbitrate the dispute; second, it decides whether "legal constraints

external to the parties' agreement foreclosed arbitration." <u>Klay</u>, 389 F.3d at 1200

(quoting <u>Mitsubishi</u>, 473 U.S. at 626, 628 (1985)).  Where a party has entered into

a written arbitration agreement that is enforceable under ordinary state-law

contract principles and the claims before the court fall within the scope of that

agreement, "the FAA requires a court to either stay or dismiss [the] lawsuit and to

compel arbitration." <u>Lambert v. Austin Ind.</u>, 544 F.3d 1192, 1195 (11th Cir.

2008).

### A.   Whether a Valid Arbitration Agreement Exists

To determine whether an enforceable agreement to arbitrate exists, the Court

applies the contract law of the state that governs formation of the agreement.

7

<u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1368 (11th Cir. 2005) (citing <u>Perry v. Thomas</u>, 482 U.S. 483, 492 n. 9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.")). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." <u>Id.</u> (citation and quotation omitted).

In this case, there are two different states that potentially supply the law governing the formation of contracts: Washington, where Fritz resides and the Plan for the grill was purchased and delivered, Compl. ¶¶ 14, 20, and Georgia, this Court's forum state and where Federal Warranty is alleged to have its principal place of business, <u>id.</u> ¶ 15. Where there is a choice of law issue in a case based on diversity jurisdiction, this Court applies Georgia's choice of law rules. <u>U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.</u>, 550 F.3d 1031, 1033 (11th Cir. 2008) (citation omitted); <u>see also</u> <u>Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.</u>, 135 F.3d 750, 752 (11th Cir. 1998) ("Federal courts sitting in diversity apply the forum state's choice-of-law rules.").

Georgia follows the *lex loci contractus* choice of law rule governing contracts, which provides that "the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract

8

was made." <u>Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.</u>, 468

F.3d 1322, 1325 (11th Cir. 2006) (quoting <u>Fed. Ins. Co. v. Nat'l Distrib. Co., Inc.</u>,

203 Ga. App. 763, 765 (1992)).  It is undisputed that, to the extent there was an

agreement at all, Fritz and the Lowe's representative formed the contract in the

state of Washington, which would ostensibly favor the application of Washington

law.

However, Georgia's *lex loci contractus* rule is subject to an exception: "the

application of another jurisdiction's laws is limited to statutes and decisions

construing those statutes.  When no statute is involved, Georgia courts apply the

common law as developed in Georgia rather than foreign case law." <u>Frank Briscoe</u>

<u>Co., Inc. v. Ga. Sprinkler Co., Inc.</u>, 713 F.2d 1500, 1503 (11th Cir. 1983) (citations

omitted); <u>Coon v. Med. Ctr., Inc.</u>, 300 Ga. 722, 729 (2017) ("In the absence of a

statute, . . . at least with respect to a state where the common law is in force, a

Georgia court will apply the common law as expounded by the courts of

Georgia.").

Fritz argues that issues regarding contract formation in Washington are

governed by statute, the Revised Code of Washington.  Pl.'s Omnibus Resp. to

Defs.' Mot. to Compel Arbitration ("Pl.'s Resp.") [Doc. 36] at 10 (citing <u>Puget</u>

<u>Sound Fin., L.L.C. v. Unisearch, Inc.</u>, 146 Wash. 2d 428, 437 (2002)).  However,

Fritz does not identify the Washington statute governing contract formation and the lone case cited by Fritz, Puget Sound, does not stand for the proposition that issues of contract formation are governed by statute.[1]

Despite the fact that there does not appear to be a Washington statute governing contract formation generally, service contracts relating to the maintenance or repair of consumer products, such as the Protection Plan in this case,[2] are governed by Chapter 48.110 of the Revised Code of Washington:

> The legislature finds that increasing numbers of businesses are selling service contracts for repair, replacement, and maintenance of motor vehicles, appliances, computers, electronic equipment, and other consumer products.  There are risks that contract obligors will close or otherwise be unable to fulfill their contract obligations that could result

_____

[1] Puget Sound did not look to statute to resolve issues of contract formation, but did cite to a case, M.A. Mortenson Co., Inc. v. Timberline Software Corp., which looked to a statute for issues surrounding the application of "Article 2 of the UNIFORM COMMERCIAL CODE (U.C.C.), chapter 62A R[evised] C[ode] W[ashington]," which "applies to transactions in goods."  M.A. Mortenson Co., Inc. v. Timberline Software Corp., 140 Wash. 2d 568, 578 (2000).  The present case is factually distinguishable in that it involves a contract for services, not the sale of goods.

[2] "'Service contract' means a contract or agreement entered into at any time for consideration over and above the lease or purchase price of the property for any specific duration to perform the repair, replacement, or maintenance of property or the indemnification for repair, replacement, or maintenance for operational or structural failure due to a defect in materials or workmanship or normal wear and tear." Wash. Rev. Code § 48.110.020; see also Compl. ¶ 61 ("The Protection Plans are service contracts as defined in 15 U.S.C. § 2301(8), which relate to the maintenance or repair of consumer products as defined in 15 U.S.C. § 2301(1).").

10

in unnecessary and preventable losses to citizens of this state. The legislature declares that it is necessary to establish standards that will safeguard the public from possible losses arising from the conduct or cessation of the business of service contract obligors or the mismanagement of funds paid for service contracts. <u>The purpose of this chapter is to create a legal framework within which service contracts may be sold in this state and to set forth requirements for conducting a service contract business.</u>

Wash. Rev. Code § 48.110.010 (emphasis added).

Accordingly, this Court will apply Washington law as it relates to Chapter 48.110 of the Revised Code of Washington and any "decisions construing th[is] statute[]," but will otherwise "apply the common law as developed in Georgia" <u>Frank Briscoe</u>, 713 F.2d at 1503. Bearing this in mind, the Court observes that Washington law governing service contracts specifically contemplates service contracts like the Protection Plan, where the terms and conditions of the agreement are provided to the purchaser within a reasonable time <u>after the sale</u>:

> Service contracts shall not be issued, sold, or offered for sale in this state or sold to consumers in this state unless the service contract provider has:
> (a) Provided a receipt for, or other written evidence of, the purchase of the service contract to the contract holder; and
> (b) Provided a copy of the service contract to the service contract holder within a reasonable period of time from the date of purchase.

Wash. Rev. Code § 48.110.050(1). Ostensibly because the controlling statutory law recognizes that valid service contracts may be formed prior to the purchaser

11

obtaining and reviewing the terms and conditions of the agreement, Washington

law also requires service contracts to contain a "free-look" provision which affords

a purchaser a period of ten to twenty days to review the terms and conditions of the

agreement and permits a purchaser to reject and cancel the agreement if after

reviewing the terms and conditions he chooses not to accept them:

> Service contracts shall require the service contract provider to permit
> the service contract holder to return the service contract within twenty
> days of the date the service contract was mailed to the service contract
> holder or within ten days of delivery if the service contract is delivered
> to the service contract holder at the time of sale, or within a longer time
> period permitted under the service contract. Upon return of the service
> contract to the service contract provider within the applicable period, if
> no claim has been made under the service contract prior to the return to
> the service contract provider, the service contract is void and the service
> contract provider shall refund to the service contract holder, or credit
> the account of the service contract holder with the full purchase price
> of the service contract. The right to void the service contract provided
> in this subsection is not transferable and shall apply only to the original
> service contract purchaser. A ten percent penalty per month shall be
> added to a refund of the purchase price that is not paid or credited within
> thirty days after return of the service contract to the service contract
> provider.

Wash. Rev. Code § 48.110.050 (3).

Fritz "acknowledges [that] a contract" was formed in this case, but disputes

"the terms of the contract." Pl.'s Resp. at 29. Fritz argues that he had insufficient

notice of the terms and conditions of the Protection Plan and the arbitration

provision in particular and, therefore, no opportunity to assent to those terms and

conditions.  Pl.'s Resp. at 10-29.  Specifically, Fritz argues that there is no binding

agreement to arbitrate in this case because the arbitration provision was in the

terms and conditions of the Protection Plan which were not provided to him until

after he made the purchase and that he therefore was not given legally sufficient

notice of the terms and conditions of the Protection Plan, including the arbitration

provision, to assent to them.  Id.

Fritz's argument is inconsistent with the statutory scheme articulated in

Chapter 48.110 and Fritz attempts to explain away the inconsistency by arguing

that the statute is irrelevant to the issues of notice and assent:

> [J]ust because this statutory provision exists or these agreements may
> be used in some industries, does not mean that consumers of the
> Protection Plans are told of or are otherwise on notice of their ability to
> cancel the plans.  Put simply, Defendants' reliance on Wash. Rev. Code
> § 48.110.050(1)(b), (3) is irrelevant to the Court's analysis on notice
> and assent.  And even if consumers were aware of their ability to cancel
> the contract, this does not put them on notice that the contract would
> also contain a provision seeking to strip them of their right to a day in
> court.

Pl.'s Resp. at 23.  Aside from the fact that he does not cite any Washington case

law holding that the statutory scheme is "irrelevant," the flaw in Fritz's argument

is that it ignores the key provisions in the statute that require service contract

sellers to (1) provide the purchaser the service contract, including its terms and

conditions, "within a reasonable period of time from the date of purchase," and

13

(2) give the purchaser the right to reject the service contract within ten to twenty days of receipt for any reason.  See Wash. Rev. Code § 48.110.050 (1), (3).  This statutory framework clearly recognizes and sanctions the type of service contract at issue here where the terms and conditions are provided to the purchaser after the sale, as long as the purchaser is afforded an opportunity to review its terms and conditions and to void the contract within the statutory period.  These provisions are clearly meant to ameliorate any issues with notice and assent by providing a reasonable opportunity to review the terms and conditions so that the purchaser may make informed decisions.  Fritz's argument would render these statutory provisions nugatory.

Fritz has not cited a single case interpreting Chapter 48.110.  In fact, the cases cited by Fritz are all inapplicable and distinguishable because they fail to even mention Chapter 48.110 or are from foreign jurisdictions not controlling in this case.  Because the cases are not "decisions construing th[at] statute[]," they are not applicable to this case.  Frank Briscoe, 713 F.2d at 1503.  For example, Fritz cites Hunichen for the proposition that "[u]nder Washington contract law, such unilateral modifications are only binding if there is notice and assent to the changed terms," but that case involved the sale of securities, not a service contract, and did not reference Chapter 48.110.  See Hunichen v. Atonomi LLC, No. C19-

14

0615-RAJ-MAT, 2019 WL 7758597, at *8 (W.D. Wash. Oct. 28, 2019), <u>report and recommendation adopted</u>, No. 2:19-CV-00615-RAJ-MAT, 2020 WL 1929372 (W.D. Wash. Apr. 21, 2020); <u>see also</u> <u>Robbins v. Comcast Cable Commc'ns, LLC</u>, No. 3:19-CV-05603-RBL, 2019 WL 4139297, at *4 (W.D. Wash. Aug. 30, 2019) (involving the validity of an arbitration provision in the context of an employment agreement).  Similarly, Fritz cites to <u>Yakima Cnty.</u> for the proposition that "[m]utual assent is required for the formation of a valid contract," but that case is distinguishable because it did not involve a service agreement subject to Chapter 48.110 and did not reference the statute.  <u>Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima</u>, 122 Wash. 2d 371, 388 (1993) (finding that there was mutual assent to the contract).

Despite the fact that Washington law (1) clearly contemplates service contracts like the Protection Plan and (2) specifically recognizes the practice that provides purchasers the opportunity to review terms and conditions of such contracts after the time of purchase, Fritz nevertheless maintains there was no mutual assent to the arbitration provision.  Georgia law requires the assent of both parties in order to form a contract.  <u>See</u> O.C.G.A. §§ 13-3-1, 13-3-2.  In Georgia, the standard for ascertaining whether there was mutual assent is an objective one:

> In determining whether there was a mutual assent, courts apply an objective theory of intent whereby one party's intention is deemed to

be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent.

Legg v. Stovall Tire & Marine, Inc., 245 Ga. App. 594, 596 (2000) (internal punctuation and citation omitted). "In making that determination, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." Frickey v. Jones, 280 Ga. 573, 575 (2006) (internal quotation and citation omitted).

The Court begins its analysis with the undisputed fact that Fritz contracted for a service contract related to his barbeque grill and, at the time of purchase, was provided a written brochure that included the terms and conditions of the contract. Compl. ¶ 20. Fritz's position is that he believed the sales receipt was his warranty and that he did not think "that the plan brochure would contain additional terms and conditions as [Fritz] thought it was a promotional brochure about the protection plan." Decl. of Andrew Fritz (July 23, 2020) ("Fritz Decl.") [Doc 36-1] ¶ 4. The brochure is over thirty-five pages long, and the first substantive page of the brochure is a "table of contents," which includes a section labeled "terms and conditions." See Protection Plan. The undisputed facts are that Fritz purchased a contract for services, a written document memorializing the terms and conditions

16

of that contract was provided to him at the time of purchase, and he chose not to

read it.[3]  Georgia law is clear that "[i]t is the duty of one who contracts to read and

inform himself of the contracts' terms." Brown v. Five Points Parking Ctr., 121

Ga. App. 819, 823 (1970) ("Thus, he is charged with knowledge of the terms

which by his conduct he accepted and became bound by.").

Fritz's position is made even more problematic by his actions, which affirm

that he knew or should have known that the brochure contained the terms and

conditions of the Protection Plan.  First, Fritz saved the brochure, indicating that he

knew it was an important document related to the Protection Plan.  Second, Fritz

consulted the brochure and receipt when he attempted to make a claim under the

---

[3] Fritz's reliance on Regan v. Stored Value Cards, Inc. for the proposition that he
did not assent to the terms and conditions of the Protection Plan is not persuasive
based on its factual distinctions.  See Regan v. Stored Value Cards, Inc., 85 F.
Supp. 3d 1357, 1364 (N.D. Ga. 2015), aff'd sub nom. Reagan v. Stored Value
Cards, Inc., 608 F. App'x 895 (11th Cir. 2015).  Regan involved the arbitration
provision associated with a prepaid debit card given to a prisoner released from jail
in lieu of the cash that was confiscated from him when he was booked into jail.  Id.
Among other differences, that case involved the terms and conditions associated
with a debit card that was given to the plaintiff upon his release, he did not apply
for the card, and he had no option to accept or decline the card.  Id.  The terms and
conditions in the Protection Plan at issue here were exactly what Fritz bargained
for: he was given a written document at the time of purchase detailing those terms
and conditions, and afforded an opportunity to read them and reject them if he
chose to do so.  Additionally, the Protection Plan was sold to Fritz in a commercial
setting between two parties who negotiated at arms-length in a transaction that is
regulated by the laws of the State of Washington.

Protection Plan. Fritz Decl. ¶ 6. Third, and most importantly, Fritz ultimately made a claim under the Protection Plan and was reimbursed $436.91. Sallee-Atchison Decl. ¶ 16. There can be no question that Fritz assented to the Protection Plan when he consulted the brochure to make a claim, ultimately made a claim, and accepted the full reimbursement for his barbeque grill. See Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985) ("Assent to the terms of the agreement can be implied from the circumstances, and conduct inconsistent with a refusal of the terms raises a presumption of assent upon which the other party can rely."); Athon v. Direct Merchants Bank, No. 5:06-CV-1CAR, 2007 WL 1100477, at *4 (M.D. Ga. Apr. 11, 2007) ("[U]nder Georgia law, the parties to an arbitration agreement may demonstrate their assent to be bound by the agreement by acting upon or accepting benefits under the contract containing the arbitration agreement even though they do not sign it."); First Citizens Mun. Corp. v. Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp., 546 F. Supp. 884, 887 (N.D. Ga. 1982) ("Like any other contract, a contract containing an arbitration provision may be binding on the parties based upon their course of conduct."); Comvest, LLC v. Corp. Sec. Group, Inc., 234 Ga. App. 277, 280-281 (1987) ("Parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the

18

contract, or the acceptance by one of the performance by the other.") (citations and internal punctuation omitted).

The Court finds that the Protection Plan was a valid service contract drafted in compliance with the requirements of Chapter 48.110 of the Revised Code of Washington. The Court further finds that Fritz was given the terms and conditions of the Protection Plan at the time of purchase and was afforded an opportunity to reject them and cancel the contract as required by statute, but did not do so. Fritz's conduct confirms that he knew or should have known that the terms of the Protection Plan were contained in the brochure provided to him at purchase and that he ultimately made a claim under the Protection Plan and received a refund for the purchase of the barbeque grill. Under such circumstances, the Court finds that Fritz assented to the terms and conditions in the Protection Plan and that the arbitration provision therein is valid and enforceable.

**B.    Scope of the Arbitration Provision**

Having found that the arbitration provision in the Protection Plan is valid and enforceable, the Court must now determine whether the claims alleged in the Complaint are within the scope of the arbitration provision. See Mitsubishi Motors Corp., 473 U.S. at 626-28. To that effect, Fritz concedes that if this Court finds

that there is a valid agreement to arbitrate, his claims "fall within the scope of the arbitration provision" found in the Protection Plan.  Pl.'s Resp. at 34.

## III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Federal Warranty Service Corporation's Motion to Compel Arbitration and to Stay Action Pending Arbitration [Doc. 15], and Defendant Lowe's Home Centers, LLC ("Lowe's")'s Motion to Stay Action Pending Arbitration [Doc. 20] are **GRANTED**.

It is further **ORDERED** that this action is **STAYED** and shall be **ADMINISTRATIVELY CLOSED** pending completion of arbitration pursuant to the terms of the arbitration provision in this case.  The parties shall notify the Court upon completion of arbitration, and either party shall have the right to move to reopen this case to resolve any remaining issues of contention.

It is further **ORDERED** that Defendant Federal Warranty Service

Corporation's Motion to Dismiss [Doc. 16] is **DENIED AS MOOT**.[4]

    **IT IS SO ORDERED** this 1st day of February, 2021.

 

                                _____

                                  MARK H. COHEN
                                  United States District Judge

---

[4] Federal Warranty brought the Motion to Dismiss in the alternative to its Motion to Compel Arbitration and Stay Action Pending Arbitration.  See Federal Warranty's Mem. of Law in Supp of Mot. to Dismiss [Doc. 16-1] at 2-3 (arguing that the claims in Fritz's Complaint "must be adjudicated, if at all, in arbitration— the subject of Federal Warranty's motion to compel arbitration," but that if the Court determines the claims are not arbitrable, they are subject to dismissal).